# Wilson *versus* McCullough.

| 19 | 77 |
| 155 | 269 |
| 19 | 77 |
| 164 | 620 |
| 19 | 77 |
| f 210 | ²626 |

1. In a proceeding by *scire facias* on a mortgage, if there was no judgment upon which a writ of *levari facias* could issue, the title was not transferred by the *levari facias* and proceedings thereon.

2. A *scire facias* on a mortgage is strictly a proceeding *in rem*.

3. In a *præcipe* for a *scire facias* against husband and wife on a mortgage, the land was not described. No writ of *scire facias* issued, but counsel appeared to the " cause for defendants, without service of writ, with the same effect as if a writ had been issued and served, but no other." A special plea was entered for the wife, that the lands before her marriage were her own, and that, at the execution of the supposed mortgage, she was the wife of the other defendant. This plea was demurred to, and judgment was entered on the demurrer for the *feme covert*. A jury was sworn between the plaintiff and the *husband*, and verdict was rendered for the plaintiff. A writ of error was taken by the plaintiff in the action, and the judgment was reversed by the Supreme Court, and judgment entered *for the plaintiff*. An amicable *scire facias* to revive the judgment was entered, entitled against the husband and wife, and the defendants, by their agreement in writing, agreed to appear and revive judgment. Execution issued on the judgment, and the land was sold. In ejectment by the children of the wife, after her death, against persons claiming under the vendee at sheriff's sale, it was *held*, that as no land was described in the *præcipe* for the *scire facias*, and no writ was issued, there was no such judgment as authorized the sale of the land mortgaged; and that the affirmance of the judgment by the Supreme Court did not give it more efficiency. The writ of *levari facias* was void for want of jurisdiction over the land mortgaged.

G 2

4. Marriage articles made between the intended husband and the guardians of the female ward, were attested by the ward, and her consent was stated therein, and that the contents were read and explained to her: it is to be presumed that such were the facts. She was a party to the same as far as an infant could be.

5. Provisions in marriage articles giving power to the trustees of the female, a minor, to convert her property, and to expend the income in support of the husband and wife, and the provision that, in default of issue and in case of her surviving her husband, the share of her property reserved for her may be disposed of by her by will, are not objectionable as a restraint of her legal rights.

6. An intended husband stipulated, by marriage articles, with the guardians of his intended wife, that, after she attained full age, they, as trustees, should have a conveyance of the one-half of the wife's property to hold to her separate use, and that he shall have no interest in it: It was *held*, that the contract was binding on the husband, and it was not allowable for him to join or aid his wife *to defeat* the uses of the articles by the execution of a mortgage after attaining her majority. The restraint *upon her* arose not from the articles, but by virtue of the coverture ; but *he* was forbidden by the articles from aiding her in such attempt.

7. After the execution of such marriage articles by the husband and the guardians of the female, the husband and wife, after she had attained her majority, executed a mortgage of the wife's land to secure a debt of her husband. *It was held,* that such articles were binding *on her husband,* and the subsequent mortgage by the husband and wife, made after she attained full age, was inoperative to charge her interest in the land as reserved to her in the articles, in favor of any one having *notice* of the marriage settlement.

8. As to the power of a female infant to bind her real estate by articles of marriage settlement, made in conjunction with her guardians, nothing decided.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of ejectment, to November Term, 1848, by Thomas S. Wilson, Ann D. Wilson, and others, against David W. McCullough, John T. Green, and Thomas C. Miller, for two thousand and fifty acres of land.

The plaintiffs and defendants claimed title through Eliza Wilson, formerly Eliza Ege; the plaintiffs in interest claiming as her children, and the defendants claiming by reason of a sheriff's sale of the lands in dispute, by means of a writ of *levari facias,* &c. ; the said writ being issued on a mortgage executed by James Wilson and Eliza, aforesaid, his wife, dated 12th December, 1821.

Eliza Ege, afterwards Eliza Wilson, was born on 29th December, 1796. She was the daughter of Michael Ege, who died in 1815. On 12th September, 1815, Thomas Duncan and Thomas Carothers were appointed her guardians. She was seised in fee simple of the land in question, and during her minority, and previous to her marriage with James Wilson, an agreement under seal was entered into between the said James Wilson of the one part, and Thomas Duncan and Thomas Carothers, as guardians of Eliza Ege, of the other part, dated 21st July, 1817. By the said articles of marriage settlement, Wilson covenanted that, on the solemnization of the marriage, and after the said Eliza arrived at lawful age, he and she will settle one-half of her

[Wilson *v.* McCullough.]

personal and real estate for her use during life, with remainder to her offspring, by her then intended, or any future husband, and in default of issue, then to such persons as may, at her decease, be her heirs under the intestate laws of Pennsylvania. If she survived the said James Wilson, or any future husband, and had no issue, she should have the right, by will, to dispose of the whole or any part of the said moieties. The rents and profits of the said moieties to be settled as aforesaid, were to accumulate during the marriage for the benefit of the wife if she should survive her husband; and, if not, then for the benefit of her children or heirs. The trustees had power, with the consent of the husband and wife, to convert the trust property into other property, and they might, in their discretion, expend the rents and profits for the support of the said husband and wife; but the husband was to have no estate in the trust property.

Eliza Ege was one of the witnesses to the execution of the marriage articles, and it was stated in them that she was present and consenting thereto. She came of age in December, 1817. She died about 1835, '36, or '37, leaving five children, the plaintiffs in this suit. Her husband, James Wilson, died afterwards. The marriage articles were recorded on 22d or 23d July, 1823.

On the part of defendants was given in evidence a mortgage dated 12th December, 1821, by James Wilson and Eliza his wife, to the Harrisburg Bank, for $10,968, conditioned for the payment of $5484. The mortgage was recorded 21st December, 1821. This was objected to on the part of the plaintiffs,

1st. Because it is a mere security for payment of money, and cannot be executed by a *feme covert* under our Acts of Assembly, where it is intended as an encumbrance of the wife's property for the husband's debts.

2d. Under the marriage settlement the husband could not join in the mortgage, as the settlement was binding on him as to one-half of the property in controversy, and he was bound in conscience not to aid her in defeating it, and not to prevent her from doing any act to confirm it; and without his joining, it would be ineffectual. Admitted, and exception by plaintiffs.

Mortgage read. Satisfaction entered of record on 21st Feb., 1837, in pursuance of resolution of the Board of Directors of the Harrisburg Bank, in January, 1837.

Also gave in evidence the docket entry of January Term, 1828, No. 49, in the case of Harrisburg Bank *v.* James Wilson and Eliza his wife. The record with all proceedings thereon was offered. The *præcipe* was simply "issue *scire facias* sur mortgage." No writ of *sci. fa.* issued.

*Parker* appeared to the cause "for defendants without service of writ, with the same effect as if a writ had been issued and served but no other." The *præcipe* was filed 4th January, 1828.

[Wilson v. McCullough.]

There was no description of the property in the *præcipe*, or filed in the cause. The case was arbitrated, and on 12th May, 1829, the award of the arbitrators was filed, finding for the plaintiff $7915.25, with costs of suit. From this award, James Wilson, for himself and as agent for his wife, appealed on the 1st June, 1829. Afterwards, to wit, on the 23d January, 1830, the case came on for trial in Court (the same being at issue on the plea of payment with leave and replication), when the plea of payment, &c., was withdrawn as to Eliza Wilson, and a special plea entered for her, setting forth that she ought not to be charged with the said debt in her lands in the same set out and sued, in and by virtue of the mortgage on which the *scire facias* has issued in this suit, because that the lands and tenements therein embraced were originally, and before the intermarriage of the said Eliza with the said James, and at the time of making said mortgage, part of her own freehold and estate; and that she, the said Eliza, at the time of execution of the said supposed mortgage, was and still is the wife of the said James Wilson, &c. To this the plaintiff demurred generally, and the said James Wilson joined in the demurrer, when the Court below entered judgment on the demurrer in favor of the said Eliza Wilson. Then follows the memorandum in the notes of the Court: " Jury now sworn between the plaintiffs and the other defendant, James Wilson, by consent of both parties."

Verdict was rendered for the plaintiff for $8649.31.

A writ of error was taken on the part of the Bank to October Term, 1830, and the Supreme Court on 13th October, 1832, reversed the judgment, and entered judgment for the plaintiff. The entry on the record being, "Judgment reversed and judgment for plaintiff." See reference to the case in 3 *Wharton* 472.

To January Term, 1833, an amicable *scire facias* issued to revive judgment No. 49 of January Term, 1828, in the name of Harrisburg Bank *v.* James Wilson and Eliza Wilson. The docket entry was to this effect: " Defendants by their agreement in writing dated 30th March, 1833, appear and revive judgment for $10,302.76, &c., with release of errors." Search was made for the agreement, but it was not found.

A *levari facias* was issued to April Term, 1833. On the 18th July, 1833, the judgment on which the *levari facias* issued was assigned to Jacob Albert. A *pluries levari facias* was issued to April Term, 1835, which was, in July, 1836, returned sold on 22d April, 1835, for $13,700. The sheriff's deed to the purchaser acknowledged 18th September, 1835. The purchaser, in April, 1836, conveyed to Miller and Cooper; afterwards Cooper conveyed to Miller; and Miller and Wife, in December, 1848, conveyed to Green and McCullough.

Defendant's counsel also offered in evidence a mortgage by James Wilson and wife to Jacob Albert, dated 17th July, 1833, in order to show that the wife repudiated the marriage settlement

;[Wilson v. McCullough.]

after attaining legal age. This was objected to, was rejected, and exception taken on the part of defendants. Defendants rested.

On the part *of plaintiffs*, John Forster was examined. He testified that he was Cashier of the Harrisburg Bank when the mortgage from Wilson and wife was taken. That the Harrisburg Bank had a claim against the Greencastle Bank, and upwards of $5000 of that claim was transferred to James Wilson, and formed the consideration of the mortgage by Wilson and wife. That he came to a knowledge of the *marriage settlement before the mortgage was taken;* it was spoken of at meetings of the Board before the mortgage was taken. It was understood by the Board and himself that there was such an instrument. He did not hear the terms of the marriage settlement spoken of, nor whether it related to real or personal estate.

The case was tried before DURKEE, J., holding a special Court. He observed that the plaintiffs claimed one-half of the land under the marriage articles, and the other half as her heirs at law. That *the defendants* under the proceedings under the mortgage have established their right to one undivided half of the land. That if the marriage articles were binding on Mrs. Wilson so that after she came of full age she could not encumber the other half by joining in a deed with her husband, that then the defendants cannot prevail against the plaintiffs as to such undivided half part, unless they are innocent purchasers, without notice of the articles of marriage settlement. He charged, that notwithstanding such agreement, Mrs. Wilson had the right, after she came of age, to mortgage her real estate, and that the mortgage by herself and husband to the Harrisburg Bank was a valid instrument unaffected by the said agreement.

He stated that it was not denied that the *scire facias* and other judicial proceedings were founded on the said mortgage; and he instructed the jury that the title, through the sheriff's sale, was not affected by any uncertainty or want of description in the record. In answer to *points* submitted *on part of the plaintiffs*, he charged, viz.: to the 1st, That the marriage articles had no effect against the mortgage to the Bank; 2d. That the articles did not prevent the wife from mortgaging the property; 3d. That though the Bank had notice of the articles, it was not material in the case. The 4th point was, That there was no judgment for any sum of money against Eliza Wilson, and the judgment has no validity. The 6th was, That there was nothing on the record of suit No. 49, January Term, 1828, to show that the proceedings were on the mortgage or against the land described therein, and that the purchaser at sheriff's sale derived no valid title under such mortgage.

The Court answered the 4th and 5th points: That the judgment was not void, but was sufficient to sustain the proceeding; 6th, That if the mortgage on which this suit was brought was the one

[Wilson *v.* McCullough.]

that was given in evidence (viz. the one executed by Wilson and wife to the Harrisburg Bank), that the plaintiffs were not affected by the want of a more particular description of the mortgaged property on the record.   The 7th point was to the effect that if the marriage settlement was known to the Harrisburg Bank when considering as to the taking of the mortgage; and if the defendants, and all the persons under whom they claim, acquired claim to the said property which was the subject of the settlement, *after the recording of the settlement*, the Bank, the defendants, and other persons under whom they claimed, were affected with notice of the settlement, and the *plaintiffs* were entitled to recover the undivided half of the premises claimed in the suit.

In reply to this, the Court instructed the jury to lay aside the marriage articles in determining the case.   That if the defendants have made good their title under the mortgage according to the instructions of the Court as to the law, they were entitled to a verdict.

Verdict was rendered for the defendants.

Error was assigned to the charge and to the answers to the points submitted.

*Bonham* and *Williamson*, for plaintiffs in error.—The marriage settlement was not intended to sell or encumber the real estate of the minor, but to prevent its sale or encumbrance.

The bare attesting a deed will not create a presumption of knowledge of the contents, but if there be a knowledge of its contents, signing as a witness is a sufficient signing within the statute of frauds to bind, though not a party thereto : 1 *Wilson* 118, 119 ; 3 *Atkyns* 503 ; 1 *Ves. Sen.* 8 ; 9 *Id.* 234.   They contended that Eliza Ege with her guardians could bind her estate by articles of marriage settlement.   That *James Wilson* was bound by the articles, and was also bound in conscience to do no act to enable his wife *to defeat them.*   Whether a female minor can bind her *real estate absolutely* or not, by articles of marriage settlement, such an agreement as aforesaid was good until disaffirmed by her, and is valid *during coverture :* Atherly on *Marriage Settlement*, 27 *Law Library* 14, 15 ; *Roper on Husband and Wife*, 7 *Law Lib.* ; *Macpherson on Infants*, 41 *Law Lib.* 203, 526 ; *Macqueen on same*, 41 *Law Lib.* 249; 2 *Paige* 511 ; 6 *Id.* 635.

Any disposition therefore of the property by James Wilson and wife, included in the marriage settlement, not in accordance with the terms of the settlement, and requiring the joint act of the husband and wife, is ineffectual; and this is especially so when the parties purchasing had notice of the articles of settlement, as was the case here according to the evidence of Gen. Forster, the cashier of the Harrisburg Bank, to which Wilson and wife executed the mortgage in contravention of the settlement : *Atherly* 41, 119, 129, 208, 423, 497 ; 1 *Strobhart (S. Carolina)*, Reid *v.* Lamar ;

[Wilson v. McCullough.]

*Eq. Dig.* 27; *Id.* 114; 2 *Younge & Collyer* 372, Lethwaite *v.* Clarkson; 1 *Brown C. C.* 115, Durnford *v.* Lane; 2 *Term Rep.* 684, Doe d. Hodgson *v.* Staple. 1 *Peere Williams* 771, was also cited.

It is not stated in the *præcipe* on what mortgage the *scire facias* is to issue. No description of the lands mortgaged was therein given. There was not a compliance with the Act of Assembly. There could be no intelligible judgment in the case..

The Court erred in their answer to the seventh point. The record of the marriage settlement was notice to all *from the time it was recorded*, and the defendants, and those under whom they claimed, having acquired a claim to the property *after the recording* of the settlement, are affected by the notice, although the articles were recorded after the date of the mortgage, notice being possessed by the Harrisburg Bank *before the mortgage was executed*.

*Miller* and *Biddle* for defendants in error.—It was contended that the settlement was *void* for want of proper parties; that the guardians were not such. The execution of the instrument was not within their powers as conferred by Act of Assembly. The guardians exceeded their authority in changing their ward's estate from a fee simple to a less estate: *Macpherson on Infants* 278; *Id.* 329; 1 *Barr* 326; *Lewin on Trusts* 92; *Law Lib.* 24; 2 *Roper* 26; *Law Lib.* 32; 2 *Kent* 243; 7 *Barr* 21; 10 *Peters* 58.

It was contended, that Mrs. Wilson had the power to mortgage her land was decided by the Supreme Court on the writ of error taken in the *scire facias* suit on the mortgage. That the judgment against her was entered by the Supreme Court. That being legally a party to the proceedings, she might do by consent what she might have been compelled to do.

The defendants, claiming under the purchaser at sheriff's sale, are not affected by errors or irregularities in the judgment and proceedings before the sale: Warder *v.* Tainter, 4 *Watts* 286; 4 *Id.* 294; 1 *Rawle* 227; 6 *Watts* 299.

If the articles were voidable by Mrs. Wilson, she did nothing to avoid them.

The opinion of the Court, filed July 20, was delivered by

LOWRIE, J.—The defendants claim title under a *levari facias*, and a sheriff's sale and deed made in pursuance thereof. But if there was no judgment upon which such a writ could issue, then the writ and the proceedings thereon can have no efficiency in transferring this title.

The action on which the writ was issued is called a *sci. fa.* upon mortgage. This is purely a proceeding *in rem;* for, when the proceeding is in proper form, the party is summoned merely to show cause why certain land, described in the *sci. fa.*, should not be taken in execution for the payment of the mortgage money and interest. It is in no sense *in personam*, for no other writ can issue

[Wilson *v.* McCullough.]

but one to sell the land, and the short judgment entered for the plaintiff, when formally set out, is that the land, described in the *sci. fa.*, or so much thereof as is necessary, be sold for the payment of a certain sum of money due on the mortgage in the said *sci. fa.* described.

We find no such judgment here, and no materials out of which it can be framed. It is certainly essential to a record that it should contain within itself all that is necessary to its completeness. But here is a proceeding to have a thing sold, and the thing is nowhere described. No writ was issued, and in the agreement waiving the writ, in the judgment, and in its revival, no land is described. The only thing that can be made out of such a judgment is, that *something*, or, which is the same thing, *nothing*, is to be sold to pay the debt. The affirmance of such a judgment on error does not increase its value; for it merely declares that the errors assigned were not sustained.

And how can we pass over such a defect? What is the use of records, if their very essence may be omitted without risk? If this defect can be now supplied, what may not be? If it can, then records are worthless as evidence of the judgment of the Court. If it can, then what advantage have skilful over blundering practitioners? The order of nature is changed, and care and carelessness are of equal merit.

No argument is presented that the irregularity is cured by the acknowledgment of the deed in Court. But we do not see that such an argument could have availed. The *lev. fa.* was not only irregular but void; for the Court never had jurisdiction over the land, as it is not once mentioned in the case, and of course it could issue no writ to sell it. It cannot be treated as an irregular writ on a judgment *in personam;* for the whole proceeding shows that the case was intended as an action upon a mortgage, and we shall not be correcting, but perverting, the intended judgment of the Court, if we treat it as a judgment *in personam*, in order to cure the negligence of the party.

This error is, therefore, well assigned, and on it this judgment must be reversed; and this saves us from considering the question, whether a married woman's rights can be affected by such a judgment, on an appearance by attorney, or by her consent, without service of process; a point that was scarcely noticed in the argument. But as the point now decided is not conclusive of all the points in this cause, we must now consider the principal question, as to the effect of the alleged marriage settlement.

On the 21st July, 1817, a marriage was in contemplation between James Wilson and Eliza Ege, she being then a minor, and thereupon articles of marriage settlement were entered into, wherein James Wilson and the guardians of Eliza Ege were named as the formal parties, and the said Eliza was not declared a party in the premises, but is treated as one in the body of the

[Wilson *v.* McCullough.]

instrument, and it is attested by her, and concludes in the following words: "the said Eliza being present and consenting thereto, and subscribing the same as a witness, the contents being first read and explained to her."

A presumption of fact is always legitimate when founded upon the ordinary course of transactions; and, therefore, when we find the guardians of Eliza Ege, and her intended husband, in treaty as to the terms of the contemplated marriage, we presume that she is advised of what is going on. And when the articles are drawn and attested by her, and they declare that she knows their contents, and consents to them, we presume that the facts are so. She is, therefore, a party, so far as an infant could be, consenting to the arrangement made in her behalf.

The following is a sufficient summary of the articles of settlement. They recite the intended marriage, that Eliza Ege is the owner of real and personal property, and that the intended husband desires to settle an adequate provision for the maintenance of his wife and her offspring; and then, in consideration of the premises, Wilson covenants that, on the marriage, and when his wife shall arrive at age, he and she will settle one-half of her fortune for her use during life, with remainder to her offspring by her then intended or any future husband, and in default of offspring then to her heirs. If she survived her intended or any future husband, and had no issue, she should have a right to dispose of the property by will. The rents and profits of the property to be settled were to accumulate during the marriage for the benefit of the wife, should she survive her husband, and if not, then for the benefit of her children or heirs. The trustees had power, with the consent of the husband and wife, to convert the trust property into other property, and they might, in their discretion, expend the rents and profits for the support of the said husband and wife, but the husband was to have no estate in the trust property.

Even this summary may, however, be reduced; for the power given to the trustees to convert the property, and to expend the income in support of the husband and wife, and the provision, that in default of issue her property shall be disposed of by will, or go to her heirs, being restrictions of the absoluteness of the settlement, and, therefore, concessions to the usual rights of ownership, are not objectionable as a restraint of the legal rights of the infant about to be married. This leaves, as the only material part of the arrangement, a covenant on the part of the intended husband with his intended wife and her guardians, that the half of her estate, real and personal, shall be settled upon her and her issue, and that the profits thereof shall accumulate during the marriage, for the purposes of the trust, and that he shall have no estate in the property.

H

[Wilson *v.* McCullough.]

She gives up nothing to her husband, and relinquishes no claim that she might have on his estate as wife or widow. Even the provision in favor of her children by any future marriage was intended to make the settled property more effectually her own. The articles could not bind her if her husband should die without issue; for then she would be free from the law of her husband, including these articles, which could have no other office than to define the proprietary relations of the husband and wife to each other and their joint issue. If there is any contract on her part, it is an implied one, that in case she survives her husband, and has children by him, those children shall have the property, or their share of it in common with any other children by a future husband.

And here we assume the point to be unfounded, which the counsel for the defendants think is so erroneously contended for by Mr. Atherly, in his work on Marriage Settlements, 29–49, that an infant may, in consideration of marriage, and with the consent of parents or guardians, bind her real estate by articles of marriage settlement. Then what have we? Simply a covenant on the part of the intended husband in consideration of marriage, that trustees shall have a conveyance of a portion of his wife's property, to hold to her separate use, and that he shall have no interest in it, and on the faith of this covenant the marriage takes place.

In violation of this agreement, Wilson procured his wife to join him in a mortgage of the land, included in the settlement, to secure a debt due by him. Does such a mortgage to one having notice of the marriage settlement, affect the wife's equity in the land?

This question is most distinctly answered in the negative in 2 *Roper on Hus. and Wife* 27, in *Atherly on Mar. Set.* 49, in *Macqueen on Hus. and Wife* 252, and in *Macpherson on Infants* 522. Macqueen thus states the principle: "Where the infant wife's property consists of land, an ante-nuptial agreement binds neither the wife nor her heir. But it will bind her adult husband; who, accordingly, will not be allowed to aid the wife in any attempt to defeat the uses of the articles. Thus as a married woman she cannot, even after attaining majority, dispose of her estate, without her husband's consent. And he cannot consent, because the articles prevent him from doing so. This, therefore, is but another example of an agreement binding on the adult husband, but not binding on the infant wife; for the restraint upon her arises, not from the articles, but from her coverture."

Macpherson states it thus: "A woman may, if she thinks fit, accede, when of full age, to a settlement made during her infancy. If she does not so accede, the conscience of her husband is bound not to aid her in defeating it, nor to do any act to prevent her confirming it, and any conveyance by them both will enure to the benefit of the settlement. The wife, therefore, cannot effectually

[Wilson v. McCullough.]

dispose of her real estate during the coverture, otherwise than according to the settlement."

This is substantially the principle declared by Lord THURLOW, in Durnford v. Lane, 1 *Bro. C. C.* 117. It is the doctrine which Lord ELDON declared to be settled law in Milner v. Lord Harewood, 18 *Ves.* 275. In Lee v. Stuart, 2 *Leigh* 76, it is very peremptorily enforced. And in many other cases it is recognised or directly decided: Temple v. Hawley, 1 *Sandf.* 153; Shaw v. Boyd, 5 *Serg. & R.* 312; Tabb v. Archer, 3 *Hen. & Munf.* 399; Healy v. Rowan, 5 *Grattan* 414; Tunno v. Trezwant, 2 *Desaus.* 264; Slocombe v. Glubb, 2 *Bro. C. C.* 545.

We decide nothing as to how far a female infant may bind her real estate in this way. We simply declare that the adult husband is bound by his covenant not to assume any power over the settled estate, and that, in equity, and, therefore, at law, in Pennsylvania, he has no interest in it, inconsistent with the settlement. He cannot join his wife in aliening or encumbering it; and as she cannot do so without him, therefore the settlement is necessarily operative during his life, not by her contract, but by reason of her marital, and his contract disability. The Court below should therefore have instructed the jury, as requested by the plaintiff's counsel, that the articles of settlement were binding on James Wilson, and rendered the mortgage ineffectual as a charge upon the undivided half of the land.

Judgment reversed and new trial awarded.

GIBSON, J., took no part in the decision of this case.